KENNETH PETERSON v. STATE.

175 So. 519.
Opinion Filed June 28, 1937.

R. B. Moseley, for Plaintiff in Error;

Cary D. Landis, Attorney General, and Roy Campbell, Assistant Attorney General, for the State.

BUFORD, J.—Writ of error is to judgment of conviction of manslaughter under an information charging "that Ken-

neth Peterson and Buck Gardner of the County of Duval and State of Florida, on the first day of March, in the year of our Lord, one thousand nine hundred and thirty-six, in the County and State aforesaid were then and there operating a certain motor-vehicle, to-wit, an automobile, upon the public highway of Duval County, Florida, and they, the said Kenneth Peterson and Buck Gardner, were then and there driving said automobile in a reckless, careless and negligent manner and that the said Kenneth Peterson and Buck Gardner were culpably negligent in operating said automobile, and that the said Kenneth Peterson and Buck Gardner by their careless, culpably negligent handling, operating and driving of said automobile caused said automobile to collide with and run into one William A. Austin, Junior, and they, the said Kenneth Peterson and Buck Gardner through and from their reckless and negligent manner in operating said automobile as aforesaid, did then and there give and inflict divers mortal wounds upon the head and body of the said William A. Austin, Jr., a more particular description of which said mortal wounds being to your Informant unknown, of and from which said mortal wounds so inflicted as aforesaid, the said William A. Austin, Jr., then and there died, and so your Informant aforesaid, does say that they, the said Kenneth Peterson and Buck Gardner, in manner and form aforesaid, by and through their culpable negligence, him, the said William A. Austin, Jr., did then and there unlawfully kill."

Severance was had and Peterson was tried.

The contention that motion to quash the information was erroneously denied is without merit. Plaintiff in error contends that because the information charged that the offense was committed by two persons jointly, it charges that which is impossible of accomplishment. On the trial it was affirmatively established that Peterson was actually in

physical control of the automobile, while it may or may not be true that Gardner was at the time jointly responsible for the alleged negligent handling of the automobile at the time of the homicide. While the doctrine of joint adventurer applicable to civil liability does not obtain in cases of this character, it is nevertheless true that the conduct of two or more people in the handling of an automobile or other dangerous instrumentality may be such as make them equally guilty of manslaughter.

Other questions presented may be resolved into one challenging the sufficiency of the evidence. There was some conflict in the evidence, but the testimony of witness Miller was sufficient, if believed by the jury, (and evidently it was) to show that the person, or persons, operating the automobile at the time and place of the homicide operated the same in a grossly and culpably negligent manner and that such negligent driving of the automobile was the sole cause of the homicide. Gardner testified positively that Peterson was in physical control of the automobile at the time and place of the homicide and Peterson denied that when he took the stand as a witness in his own behalf. Peterson testified, in part, as follows:

"Q. Kenneth, I am going to ask you this question, were you driving the automobile that struck and injured and caused the death of W. A. Austin, Junior?

"A. No, sir.

"Q. Were you in any condition to drive an automobile around twelve thirty or one o'clock, on the morning of March 1st, of this year?

"A. No, sir.

"Q. Why were you not in condition to do so?

"A. Because I had been drinking all day before, and that night too.

"Q. You had been drinking all that day and that night?

"A. Yes, sir. I don't remember when twelve or one o'clock came.

"Q. In other words, you were drunk?

"A. Yes, sir.

"Q. Did you know what was going on?

"A. No, sir.

"Q. Did you know that William A. Austin, Junior, had been hit?

"A. No, sir.

"Q. Did you know it when he was hit?

"A. No, sir."

And again Peterson testified:

"Q. When you said you were not in the car, what did you mean by that?

"A. That I wasn't in the car when the boy was run over, and I yet don't know it.

"Q. You yet don't know whether you were in there or not?

"A. No, sir.

"Q. And in connection with your brother-in-law, you say now that what you actually said was that you thought, that you told them, you thought you were at your brother-in-law's?

"A. Yes, sir, that I was staying there at that time, and I was.

"MR. CREWS: Q. Now then, in answer to that question, at the time this automobile killed this man, were you in the car to which you gave the answer no, sir, you now want to change that statement now—

"A. I don't know whether I was in the car or not.

"Q. I am asking you whether or not at the time and place you told them so.

"A. Yes, sir, I told them that.

"Q. You told them you were in the car, or were not in the car?

"A. Yes, sir, not in the car.

"Mr. Crews: That is all.

Redirect Examination by Mr. Moseley:

"Q. You yet say you don't know whether you were in the car or not?

"A. Yes, sir.

"Q. Why do you say that?

"A. Because I don't know.

"Q. You don't know?

"A. No, sir.

"Q. Why don't you know whether you were in the car or not?

"A. Because I was asleep and drunk, and I don't remember going out there on that road at all that night."

So there is substantial evidence in the record to sustain the verdict and judgment.

The judgment should be and is affirmed.

So ordered.

Ellis, C. J., and Terrell and Brown, J. J., concur.

Mr. Justice Davis wrote a specially concurring opinion herein, which appears below.

Brown, J.—If there was any error in charging that another person, in addition to this defendant, was engaged with him in operating the automobile, in a careless and negligent manner, it was harmless error in this case. What good would it have done Peterson if Gardner's name had been eliminated from the information? While, as a general rule, an automobile is operated only by one person, it is not impossible for two persons to take part in such operation. But a joint participation in a *negligent* operation would be unusual to say the least.

DAVIS, J. (concurring).—Mere presence in an automobile being recklessly driven does not impute guilt of crime, and an information charging all of the occupants of a car inflicting injury with manslaughter in order to have it act as a drag net to convict some of the occupants on, should not be countenanced. See I Bishop's Criminal Law, page 633. A joint manslaughter caused by the operation of an automobile might theoretically be possible but it would be so unusual as to require a pleading of the special facts constituting it. However, the error in the case was cured when a severance and separate trial were had, so I concur in affirmance.

ELLIS, C. J., concurs.