740 So.2d 554 (1998)
STATE of Florida, Appellant,
v.
Gregory Alan MORRIS, Appellee.
No. 97-1108.
District Court of Appeal of Florida, First District.
March 13, 1998.
Robert A. Butterworth, Attorney General; L. Michael Billmeier, Assistant Attorney General, Tallahassee, for Appellant.
Spiro T. Kypreos, Pensacola, for Appellee.
LAWRENCE, Judge.
The State appeals the dismissal of an amended information charging Gregory Alan Morris (Morris) with manslaughter. The charge arose from an auto collision on January 12, 1996, in Santa Rosa County. We reverse.
Morris filed a motion to dismiss pursuant to Florida Rule of Criminal Procedure 3.190(c)(4). Morris, in order to prevail on such a motion, must allege undisputed material facts, and show that the undisputed facts do not establish a prima facie case. State v. Parrish, 567 So.2d 461 (Fla. 1st DCA 1990). We are required to review the trial court's ruling resolving inferences from all facts in the light most favorable to the State. Boler v. State, 678 So.2d 319 (Fla.1996); Parrish. We moreover must determine, not whether a jury would find a defendant guilty of the charged crime but, rather, whether the facts could be sufficient for a jury to convict a defendant. State v. Knight, 622 So.2d 188, 190 (Fla. 1st DCA 1993) ("Whether or not a jury would ultimately find or would be justified in finding [the *555 defendant] guilty is not now our concern.").
The facts of the instant case establish a prima facie case of manslaughter by culpable negligence. The trial court thus erred in ruling, as a matter of law, that the facts do not establish a prima facie case. The court reached this ruling by concluding that no proximate cause existed between Morris's alleged culpable negligence and the homicide. We previously have explained the "proximate cause" requirement in vehicular homicide:

Proximate causation is of course an essential requirement for conviction of vehicular homicide. ... [I]f the intervening cause is foreseeable, the original negligent actor may yet be held liable. As Gibson demonstrates, it is necessary to determine whether the harm that occurred was within the scope of the danger created by the defendant's negligent conduct. ...
Applying the above test to the facts before us, we see that although M.C.J. could not reasonably have foreseen the specific circumstance causing her to swerve her automobile, i.e., the Fiat's sudden turn into her lane of traffic, she should have reasonably foreseen that the same general type of harm might occur if she knowingly drove her vehicle with defective brakes at excessive speeds. Given the evidence before us, it is impossible to say, ... that there is no evidence that the original tortfeasor set in motion a chain of events resulting in the deaths of the occupants of the other vehicle.
M.C.J. v. State, 444 So.2d 1001, 1005 (Fla. 1st DCA 1984) (citations omitted) (emphasis added) (holding that the state presented sufficient evidence to show that appellant's actions were a proximate cause of the vehicular homicide). We apply the same explanation to the "proximate cause" requirement in the instant manslaughter by culpable negligence case.
The undisputed facts in the instant case are these. Morris left Selma, Alabama, with C.S., then fifteen, on a trip to Florida. Morris was driving a car owned by C.S.'s father. Morris, during the drive, consumed beer to the point of intoxication. Morris, swerving in and out of his lane, told C.S. that C.S. had to drive. C.S. protested because he had no driver's license. Morris knew C.S. had neither daytime nor night driving experience. C.S. nevertheless agreed to drive because he knew Morris was drunk and he did not want to be stranded on the road late at night (it was approximately 1:00 A.M.). The road was a dark two-lane rural highway. C.S., asleep at the wheel, crossed the center lane, and struck and killed James Acree. C.S. entered a guilty plea to driving without a license, and causing a death through negligence; he was sentenced to juvenile community control.
The trial court concluded that the cause of the instant fatality was "that the driver of the car fell asleep," "not so much that the [unlicensed] person was driving, but that he fell asleep." Morris however, like M.C.J., although he could not have foreseen the specific circumstance causing deaththat C.S. would fall asleep at the wheelnevertheless reasonably should have foreseen that the same general type of harma deadly auto accidentmight unfold from ordering a reluctant, unlicensed juvenile behind the wheel of a car, in the wee hours of the morning, on a dark, two-lane highway, with a drunk passenger unable to supervise in any way. The harm that occurreda deadly auto accident"was foreseeable and within the scope of the danger created by [Morris's] negligent conduct." Id. at 1005. The trial court thus erred as a matter of law in concluding that there is no evidence that Morris set in motion a chain of events resulting in the death of James Acree. M.C.J.
We therefore reverse the order dismissing *556 the manslaughter count[1] against Morris, and remand for consistent proceedings.
MICKLE and PADOVANO, JJ., concur.
NOTES
[1] The trial court properly dismissed another count. We affirm the dismissal of that count without discussion.