959 So.2d 355 (2007)
Jose Enrique HERNANDEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-2519.
District Court of Appeal of Florida, Third District.
June 6, 2007.
*356 Roy Wasson, Private Court-Appointed Counsel, for appellant.
Bill McCollum, Attorney General, and Angel L. Fleming, Assistant Attorney General, for appellee.
Before COPE, C.J., and GREEN, J., and SCHWARTZ, Senior Judge.
SCHWARTZ, Senior Judge.
Jose Enrique Hernandez appeals from his convictions on two counts of manslaughter by culpable negligence. We affirm.
The tragic scenario involved in this case began at a bar in south Miami-Dade County on the night of December 8, 2001. Of the three half-brothers who were among others present, Jose Luis Hernandez-Benitez, the only one who was sober but who had no license, asked that Jose Enrique, who was highly intoxicated, let Saul Garcia, a sober friend, drive Jose Enrique's truck from the bar. Jose Enrique adamantly refused, stating, according to Jose Luis, that "he wouldn't give [the keys] to me, that that was his truck, the keys to his truck, he wouldn't give them to anyone, that that was his truck." True to his threat, Jose Enrique drove from the bar with the passenger with whom he had driven to it: the third half-brother Ruben Soto, who was also plainly extremely impaired. This statement makes the acts that subsequently occurred seem both prophetic and anticlimactic. Within less than a half hour after they left the bar, and with Ruben now driving, the truck ran a stop sign at a high rate of speed and struck a car at an intersection, killing two innocent persons. The subsequent investigation showed that, with 0.08 percent the legal limit, Jose Enrique's blood-alcohol level was 0.232 percent and Ruben's was 0.182 percent.
Both Jose Enrique and Ruben were tried before separate juries in a single trial. Although both defendants insisted that Jose Enrique was driving at the time of the accident, there was ample expert and lay testimony that, as the state contends, Ruben was the driver, with Jose Enrique in the back seat. The juries plainly accepted this claim, finding, as they did, Ruben guilty of DUI manslaughter and of manslaughter by culpable negligence, demonstrating that he had been the driver, and Jose Enrique guilty of manslaughter by culpable negligence, demonstrating that he was not. On this, Jose Enrique's appeal, his primary contention is the alleged insufficiency of the evidence to support those convictions. We find otherwise.
Our conclusion is based upon the determination that Jose Enrique's conduct of *357 refusing to permit a sober operator to drive the vehicle, and instead insisting upon operating the vehicle himself with only another highly impaired person available to operate the truck indeed amounted to "consciously doing an act or following a course of conduct that the defendant must have known, or reasonably should have known, was likely to cause death or great bodily injury," Fla. Std. Jury Instr. (Crim.) 7.7, thus satisfying the elements of manslaughter by culpable negligence. See Taylor v. State, 83 So.2d 879 (Fla.1955); Michelson v. State, 927 So.2d 890 (Fla. 4th DCA 2005); Davison v. State, 688 So.2d 338 (Fla. 1st DCA 1996), review denied, 697 So.2d 510 (Fla.1997); Werhan v. State, 673 So.2d 550 (Fla. 1st DCA 1996); Kornegay v. State, 520 So.2d 681 (Fla. 1st DCA 1988); see also Michel v. State, 752 So.2d 6, 10-11 (Fla. 5th DCA 2000), review denied, 766 So.2d 222 (Fla.2000), and cited cases. See generally 1 Wayne R. LaFave, Substantive Criminal Law, § 5.4 (2d ed. Westlaw database updated 2007).
We also reject the only claim pressed by the appellant at oral argument: that the state's case was fatally flawed by the fact that no evidence shows the precise circumstances in which Ruben was given or otherwise took over the wheel. Because we think it obvious that the possibility that the only other also-intoxicated driver would indeed actually drive the vehicle upon Jose Enrique's inability or unwillingness to do so was directly within the zone of danger created by Jose Enrique's conduct in the first place, see Eversley v. State, 748 So.2d 963 (Fla.1999); State v. Gensler, 929 So.2d 27 (Fla. 3d DCA 2006), review denied, 945 So.2d 1289 (Fla.2006), it does not matter under the law that Jose Enrique was unable to foresee "the exact concatenation of events," K-Mart Enters. of Fla., Inc. v. Keller, 439 So.2d 283, 286 (Fla. 3d DCA 1983), review denied, 450 So.2d 487 (Fla.1984), which actually culminated in the accident. See D.E. v. State, 904 So.2d 558 (Fla. 5th DCA 2005); Michel, 752 So.2d at 12; State v. Morris, 740 So.2d 554 (Fla. 1st DCA 1998); see also Kitchen v. K-Mart Corp., 697 So.2d 1200 (Fla.1997); Gibson v. Avis Rent-A-Car Sys., Inc., 386 So.2d 520 (Fla.1980); Boggs v. Butler, 129 Fla. 324, 176 So. 174 (1937); Pacheco v. Fla. Power & Light Co., 784 So.2d 1159 (Fla. 3d DCA 2001), review denied, 805 So.2d 806 (Fla.2001). See generally 2 LaFave, supra, § 13.2 (2d ed. Westlaw database updated 2007)("[I]f A's own conduct in turning over the car to one known to be intoxicated is itself criminally negligent and if that conduct is found to be the legal cause of the death, then A is guilty of manslaughter on that basis."). We have examined the other points and find them to be without merit.
Affirmed, as modified.[1]
NOTES
[1] We agree with the state's concession that the judgment improperly reflects a violation of the vehicular homicide statute. We therefore order that the convictions be modified to delete any reference to that statute.