854 So.2d 692 (2003)
STATE of Florida, Appellant/Cross-Appellee,
v.
Richard DEL RIO, Appellee/Cross-Appellant.
No. 2D02-3786.
District Court of Appeal of Florida, Second District.
July 25, 2003.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Richard M. Fishkin, Assistant *693 Attorney General, Tampa, for Appellant/Cross-Appellee.
Randall O. Reder of Randall O. Reder, P.A., Tampa, for Appellee/Cross-Appellant.
ALTENBERND, Chief Judge.
The State charged Richard Del Rio with vehicular homicide, and the jury returned a verdict of guilty as charged. Thereafter, the trial court granted a judgment of acquittal, concluding that the unfortunate accident from which this charge arose was the result of negligence and careless driving but that Mr. Del Rio's actions did not meet the level of recklessness required to convict him of vehicular homicide. The State appeals this judgment. We affirm.
On November 28, 2000, at approximately 1 p.m., Richard Del Rio was driving home from high school on Whispering Hollow Drive. Whispering Hollow Drive ends with a stop sign at a T-intersection with Branch Mooring Drive. The evidence at trial was conflicting as to whether Mr. Del Rio stopped at this intersection. Nevertheless, Mr. Del Rio turned left onto Branch Mooring Drive and proceeded approximately 47 feet before the front of his car hit a woman who was pushing her baby in a stroller. The woman was in the street approximately six feet from the curb. Although the baby was unharmed, the woman died from head injuries she sustained when she hit her head first on Mr. Del Rio's windshield and then again on the pavement as she fell off the vehicle.
There were no witnesses to this accident. Mr. Del Rio called 911 and reported the accident. He told police that he stopped at the intersection prior to turning. He claimed that he struck the woman because his vision was obstructed by a white van and a large bush.
Accident reconstruction experts testified that Mr. Del Rio was driving his car between 17 and 26 miles per hour. The posted speed limit in this residential neighborhood was 25 miles per hour. The State's expert opined that Mr. Del Rio had not stopped at the intersection prior to turning onto Branch Mooring Drive but instead had cut through the intersection.
Based upon this evidence, the jury convicted Mr. Del Rio of vehicular homicide. Mr. Del Rio then moved for a judgment of acquittal, arguing that the State had not proven a prima facie case because his actions were not reckless as required to support such a conviction. The trial judge agreed and granted the motion.
The vehicular homicide statute states:
"Vehicular homicide" is the killing of a human being, or the killing of a viable fetus by any injury to the mother, caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another.
§ 782.071, Fla. Stat. (2000); see also W.E.B. v. State, 553 So.2d 323 (Fla. 1st DCA 1989); Rushton v. State, 395 So.2d 610, 612 (Fla. 5th DCA 1981). Section 782.071 has remained substantially unchanged since it first entered Florida law in 1975. See ch. 74-383, § 16, Laws of Fla.
Vehicular homicide cannot be proven without also proving the elements of reckless driving. Chikitus v. Shands, 373 So.2d 904, 905 (Fla.1979). Thus, the State must necessarily adduce evidence showing conduct at least sufficient to constitute reckless driving which is defined as involving a "willful or wanton disregard for the safety of persons or property." See § 316.192, Fla. Stat. (2000). Merely proving careless driving, see § 316.1925, Fla. Stat. (2000), is insufficient to sustain a conviction. In McCreary v. State, 371 *694 So.2d 1024 (Fla.1979), the supreme court described the level of culpability required for vehicular homicide as one that falls short of culpable negligence but that is more than a mere failure to use ordinary care. Id. at 1026.
There are only a few reported cases interpreting the vehicular homicide statute. In most of the reported cases, the drivers engaged in conduct far more dangerous than that demonstrated by this case. See McCreary, 371 So.2d 1024 (affirming vehicular homicide conviction where defendant consumed several glasses of beer and drove through heavily congested intersection); Hamilton v. State, 439 So.2d 238 (Fla. 2d DCA 1983) (affirming vehicular homicide conviction where defendant was speeding at 50 to 60 mph in 30 mph residential area with "SLOW CHILDREN PLAYING" sign); Byrd v. State, 531 So.2d 1004 (Fla. 5th DCA 1988) (affirming vehicular homicide conviction where defendant was speeding at 81 mph through a construction zone after being warned by his passenger to slow down). If anything, the conduct here is not as dangerous as that found to be insufficient in other reported cases. See W.E.B., 553 So.2d 323 (reversing vehicular homicide conviction where teenage driver, who had been drinking, drove off pavement edge at night while speeding, overcorrected, and hit victim's car).
It is undisputed that Mr. Del Rio failed to see the pedestrian who was walking in this residential street. However, he was not speeding or under the influence of any substance. At worst, he had cut through the T-intersection without stopping. Although it is not entirely clear from this record that his failure to stop at the intersection was causally connected to the victim's death, we assume that it was for purposes of this opinion. In the absence of additional evidence, the trial court made the correct legal ruling. Mr. Del Rio was driving carelessly, but the evidence does not establish the type of recklessness required to establish a prima facie case of vehicular homicide.
Affirmed.
FULMER and WALLACE, JJ., concur.